UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRUSTEES OF THE PAINTERS,
UNION DEPOSIT FUND,

        Plaintiff,

vs.

G&T COMMERCIAL COATINGS,
INC. and ANASTASIOS G. LIANGIS,

        Defendants.
_____/

Civil Action No.
13-CV-13261

Honorable Patrick J. Duggan

**OPINION AND ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, and DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE**

This is an action for unpaid fringe benefit contributions. Plaintiffs, the Trustees of the Painters Union Deposit Fund, filed this lawsuit on July 30, 2013, alleging that Defendants G&T Commercial Coatings, Inc. (G&T) and Anastasios G. Liangis, its principal, failed to make fringe benefit contributions as required under the terms of the parties' collective bargaining agreement (CBA). The Trustees seek $159,378.24 in allegedly unpaid contributions on behalf of thirty-two G&T employees for the period beginning January 1, 2012 through May 9, 2013, and liquidated damages in the amount of $31,875.65, for a total of $191,253.89.[1] The Trustees also seek costs and attorney fees. Defendants argue that they paid all the fringe benefit contributions to which the Trustees are entitled during the relevant time period.

---

[1] Since this lawsuit was filed, Defendants have paid to the Trustees a portion of the allegedly unpaid benefits sought in this case. Page ID 448. For this reason, the total amount sought by the Trustees has decreased from $191,253.89 to $180,628.65.

Now before the Court are the parties' cross-motions for summary judgment. The matter is fully briefed. In addition, the parties filed supplemental briefs pursuant to the Court's May 14, 2014 order. Upon review of the parties' submissions, the Court concludes that oral argument would not aid the decisional process. *See* E.D. Mich. LR 7.1(f)(2). For the reasons that follow, the Court will deny both summary judgment motions without prejudice and deny as moot the defense motion to strike.

Because this is an action for unpaid fringe benefit contributions, the provision of the CBA discussing G&T's obligation to make fringe benefit contributions is of obvious importance. That provision provides, in pertinent part:

> Employer [G&T] shall contribute monthly or weekly or at such other intervals as shall be required . . . the sum of [$16.08] for each hour worked during that month or other interval by all employees employed by him and covered by this Agreement . . .

The Court hereinafter refers to this provision of the CBA as "the fringe benefit clause."

The parties disagree about the meaning of the fringe benefit clause. Defendants argue that the phrase "and covered by this Agreement" modifies "each hour worked," thus requiring the employer to contribute only for hours spent performing work that is covered under the CBA. According to Defendants, "covered" work is defined in the CBA as "any preparatorial work, wall washing, painting, hanging of wallpaper, or wall covering, removal of wallpaper or paper cleaning." The "any preparatorial work . . ." language is contained within the following CBA provision:

> [G&T] agrees that it will not SUBLET OR SUBCONTRACT to any of it's [sic] employees or to any other individual or business entity of any type not signatory to this Agreement by contract or otherwise, any preparatorial work, wall washing, painting, hanging of wallpaper, or wall covering, removal of wallpaper or paper cleaning, unless such person or sub-contractor is party to a signed agreement with the Union.

Given the context in which the "any preparatorial work . . ." language appears, it is unclear why Defendants believe the clause defines covered work; the provision is not drafted in the typical nomenclature for the definition of a contractual term.

The position of the Trustees regarding the meaning of the fringe benefit clause is confusing. In their summary judgment papers, the Trustees argue that the phrase "and covered by this Agreement" modifies "all employees" so that if any covered employee performs any work at all – regardless whether the work itself is covered or uncovered – the employer is obligated to contribute for every hour worked. In support of this interpretation, the Trustees rely on an unpublished decision by another judge of this court in which the fringe benefit clause at issue in this case was interpreted in the manner urged by the Trustees. *See Painters Union Deposit Fund v. D.P.L. Painting, Inc.*, No. 83-CV-0374 (E.D. Mich. Apr. 1, 1985).[2] At the same time, however, the Trustees have litigated this case as if they agree with Defendants that fringe benefit contributions must only be paid for covered work. This is because the amount of damages sought in this matter was computed by the Trustees' auditor, Jeffrey Ruehle, based on his belief that Defendants are obligated to contribute only for hours spent performing covered work. *See* Page ID 448 ("I amended the debit memo downward because I was satisfied to the extent of the amount of the reduction given . . . that payments made to the employees through the general register were not for covered work."). In addition, counsel for the Trustees admitted in their summary judgment brief that, "[u]nder the governing [CBA], Defendant G&T is obligated to make fringe benefit payments at the designated hourly rate for each hour of covered work performed." Page ID 812-813.

---

[2] This is the only case cited by the parties in which a court has interpreted the fringe benefit clause at issue in this case.

In light of the inconsistent arguments advanced by the Trustees in their summary judgment papers (*i.e.*, on the one hand, citing *D.P.L. Painting* for the proposition that the fringe benefit clause should be interpreted to require G&T to contribute for every hour worked by a covered employee and, on the other hand, admitting that G&T is only obligated to make fringe benefit payments for "each hour of covered work performed"), the Court ordered the Trustees to file a supplemental brief explaining their contradictory positions with regard to their view on the meaning of the fringe benefit clause.

Instead of clarifying their position, the Trustees further complicated it by introducing for the first time in their supplemental brief a third, entirely new interpretation of the fringe benefit clause. In their supplemental brief, the Trustees argue that the fringe benefit clause requires Defendants to contribute benefits – not only for all hours (both covered and non-covered) worked by union members, as previously argued – but also for "any work performed by a non-union employee who performs some 'preparatorial work, wall washing, painting, hanging of wallpaper, or wall covering, removal of wallpaper or paper cleaning.'" Page ID 1218. This new interpretation differs from the interpretation previously advanced by the Trustees in that it would require Defendants to contribute for some hours worked by non-union members.

The Court summarily rejects this new interpretation for three reasons, each of which is independently sufficient. First, the Trustees inappropriately assert this argument for the first time in their supplemental brief, which was filed at the Court's request well after the completion of briefing on the parties' cross-motions for summary judgment. This is far beyond the appropriate time to assert a new argument. *See Howard v. Pierce*, 738 F.2d 722, 723 n.2 (6th Cir. 1984) (refusing to consider argument raised for the first time in reply brief). Second, the Trustees fail to explain how the new interpretation is even arguably supported by the language of

4

the fringe benefit clause. Third, the new interpretation is flatly inconsistent with the litigation conduct of the Trustees thus far in this case.[3]

This leaves two competing interpretations of the fringe benefit clause. Again, Defendants argue that the fringe benefit clause requires them to contribute only for hours spent performing work that is covered under the CBA, and that work that is covered under the CBA is "any preparatorial work, wall washing, painting, hanging of wallpaper, or wall covering, removal of wallpaper or paper cleaning." If this interpretation is accepted, to determine whether Defendants were under an obligation to contribute for a given hour of work, the Court would have to know what kind of work the employee was performing.

Conversely, the Trustees argue that the fringe benefit clause requires Defendants to contribute for all hours worked by covered employees – regardless of the type of work the employee was performing. If this interpretation is accepted, the Court would not need to know the kind of work the employee was doing; rather, the relevant question in determining whether Defendants were under an obligation to contribute for a given hour of work would be whether the employee who performed the work was a covered employee at the time the work was performed.

The proper interpretation of the fringe benefit clause is a critical, threshold issue in this case because the type of evidence relevant to determining the amount of the delinquency, if any, depends on how the fringe benefit clause is interpreted.

---

[3] For example, the Trustees state in their summary judgment brief that they reduced the fringe benefit shortfall sought in this case in light of deposition testimony from individuals who testified that they were not union members when they performed the work in question. *See* Page ID 388. Had the Trustees seriously believed that fringe contributions were necessary for work performed by non-union members, their auditor obviously would not have agreed to exclude the hours worked by non-union members based on the fact that they were not union members.

The present summary judgment motions do not focus on the question of how the fringe benefit clause should be interpreted. Rather, the parties put the cart before the horse by instead focusing on other legal issues that may or may not ultimately be relevant, depending on how the Court interprets the fringe benefit clause.[4] Before determining the amount of unpaid

---

[4] Defendants filed their summary judgment motion before the Trustees filed theirs. In their motion, Defendants assume that the fringe benefit clause should be interpreted to mean that contributions are only required for covered work, perhaps because they were unaware at the time that the Trustees disputed that interpretation. In their response brief, while the Trustees briefly argue that "each employee performing covered and non-covered work is covered for all of the hours they work," Page ID 818-819, they do not rely on the language of the fringe benefit clause in making that argument; instead, they rely – without explanation – on a Ninth Circuit case (that the Trustees inaccuracy represent as being a Sixth Circuit case) interpreting language in a labor agreement that has nothing to do with the language at issue in the present CBA. *See Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336 (9th Cir. 1988)). To confuse matters, elsewhere in their response brief, the Trustees state: "Under the governing [CBA], Defendant G&T is obligated to make fringe benefit payments at the designated hourly rate for each hour of covered work performed." Page ID 812-813. In short, the Trustees' arguments are all over the map.

In the Trustees' motion for summary judgment, the Trustees again rely very little on the language of the fringe benefit clause in arguing that contributions are required for all hours worked by covered employees, although they do discuss a nearly thirty-year-old unpublished district court case – *D.P.L. Painting* – in which the same fringe benefit clause as the one at issue here was interpreted to require fringe benefit contributions for all hours worked by covered employees. Instead of focusing on the language of the present CBA, the Trustees devote the majority of their brief to arguing that, as a result of Defendants' alleged inadequate recordkeeping, Defendants are liable for contributions on all hours worked by a given employee during a period in which it is shown that the employee performed some covered work. *See Mich. Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 696 (6th Cir. 1994). Under this theory, the Trustees argue that Defendants' payroll records are not sufficiently detailed, in violation of 29 U.S.C. § 1059(a), to allow employees to determine the amount of benefits due to them because the records produced by Defendants do not reflect the nature of the work for which they were being paid. In making this argument, the Trustees appear to acknowledge, at least implicitly, that it is the nature of the work performed by an employee (*i.e.*, covered or not covered) that dictates whether benefits must be paid. At the same time, though, they maintain that benefits must only be paid on behalf of covered employees irrespective of the nature of the work performed.

Putting aside the confusing and contradictory arguments advanced by the Trustees, if the Trustees are right that the fringe benefit clause requires contributions based on the status of the employee and not based on the nature of the work performed, there may be no need to determine

contributions that are owed, if any, the Court must first interpret the fringe benefit clause to determine the event that triggers the obligation to contribute. Namely, is it the nature of the work performed or the status of the employee performing the work that triggers Defendants' obligation to contribute?

The Court applies the following rules of construction in interpreting the fringe benefit clause:

> Many of the basic principles of contractual interpretation are fully appropriate for discerning the parties' intent in collective bargaining agreements. For example, the court should first look to the explicit language of the collective bargaining agreement for clear manifestations of intent. The intended meaning of even the most explicit language can, of course, only be understood in light of the context which gave rise to its inclusion. The court should also interpret each provision in question as part of the integrated whole. If possible, each provision should be construed consistently with the entire document and the relative positions and purposes of the parties. As in all contracts, the collective bargaining agreement's terms must be construed so as to render none nugatory and avoid illusory promises. Where ambiguities exist, the court may look to other words and phrases in the collective bargaining agreement for guidance. Variations in language used in other durational provisions of the agreement may, for example, provide inferences of intent useful in clarifying a provision whose intended duration is ambiguous. Finally, the court should review the interpretation ultimately derived from its examination of the language, context and other indicia of intent for consistency with federal labor policy. This is not to say that the collective bargaining agreement should be construed to affirmatively promote any particular policy but rather that the interpretation rendered not denigrate or contradict basic principles of federal labor law.

*Int'l Union, United Auto. v. Yard-Man, Inc.*, 716 F.2d 1476, 1479-80 (6th Cir. 1983) (citations omitted).

Applying these rules, the Court concludes that the fringe benefit clause may be susceptible to two meanings – the one urged by Defendants, on the one hand, and the one urged by the Trustees, on the other hand. In other words, whether the phrase "and covered by this Agreement" modifies "each hour worked," on the one hand, or "all employees," on the other

---

whether Defendants violated their duty to keep adequate records, assuming the records are detailed enough to show whether a particular employee is a covered employee.

7

hand, is not entirely clear from examining the language of the fringe benefit clause alone.[5]  As explained, the current briefing does not sufficiently discuss the issue of how the fringe benefit clause should be interpreted.

The Court will proceed as follows.  It will deny the present motions for summary judgment without prejudice and elicit briefing from the parties devoted solely to the following questions:

> (1) Should the fringe benefit clause be interpreted to require contributions only for hours spent performing work that is covered under the CBA, or should it be interpreted to require contributions for all work performed by covered employees?
>
> (2) If the former, what work is "covered"?  If the latter, who is a "covered employee" and is there any dispute whether the thirty-two employees involved in this case are covered?

Supplemental briefs addressing these issues are due by July 11, 2014.  Response briefs are due by July 25, 2014.  The briefs shall not exceed fifteen pages in length, and no additional briefing will be permitted unless requested by the Court.  The parties' briefs shall contain a thorough analysis under the *Yard-Man* framework.[6]  The parties may wish to discuss: (1) which interpretation is supported by the language of the fringe benefit clause; (2) the context giving rise to the inclusion of the fringe benefit clause in the CBA; (3) the degree to which the urged interpretation of the fringe benefit clause is consistent with the entire CBA and the relative

---

[5] This conclusion should not come as a surprise because, almost thirty years ago, United States District Judge Philip Pratt struggled to interpret a materially identical fringe benefit clause in *D.P.L. Painting*, a case that was brought by the Painters Union Deposit Fund – the Plaintiff who brought the present action.  It is beyond the comprehension of the Court why the same careless fringe benefit language is still operative *thirty years later*.  Regardless, *D.P.L. Painting* is the only case cited by the parties – and the only case known to the Court – interpreting a fringe benefit clause identical to the one at issue here.  Although the case is certainly persuasive authority on which this Court might rely in interpreting the fringe benefit clause, the Court prefers to conduct its own analysis of the fringe benefit clause using the rules of construction articulated by the Sixth Circuit in *Yard-Man*.

[6] If the parties do not believe the *Yard-Man* framework is applicable for any reason, they shall clearly state why and describe the rules of construction that the Court should apply in construing the fringe benefit clause.

positions and purposes of the parties; (4) other words or phrases found in the CBA that may shed light on the meaning of the fringe benefit clause; (5) the degree to which the urged interpretation is consistent with federal labor policy; and (6) any other indicia of the parties' intent.  The parties may attach supporting evidence to their brief.  If the parties rely on legal authority in support of their arguments, the authority should be discussed and not merely cited.  The Court emphasizes that it is interpreting the fringe benefit clause in the present case; thus, if the parties rely on cases interpreting different CBA language, they should explicitly state why that authority is relevant to the Court's analysis of the present CBA language.

Additionally, before the July 11, 2014 due date, the parties shall discuss the two issues articulated above and attempt in good faith to find common ground regarding those issues.  The parties shall file a joint statement by July 11, 2014 certifying that they have complied with this concurrence requirement.  In addition, the joint statement shall recite the issues on which the parties agree and issues on which they do not agree.[7]

After the Court has interpreted the fringe benefit clause, it will allow the parties, if they choose, to file appropriate motions asking the Court to resolve the ultimate issue in this case – the amount of benefits that remain owing on behalf of the thirty-two employees involved during the relevant time period, if any, pursuant to the Court's interpretation of the fringe benefit clause.

Two additional issues must be addressed.  First, the parties dispute in their summary judgment motions whether Defendant Anastasios G. Liangis, G&T's principal, may be held personally liable for any unpaid contributions.  However, as another court in this district has held, "[i]t is premature to decide the issue of [a principal's] liability before any liability of [the

---

[7] For example, the parties might indicate in their joint statement that, if the Court interprets the fringe benefit clause to require contributions for hours spent performing covered work, the parties agree that covered work means "any preparatorial work, wall washing, painting, hanging of wallpaper, or wall covering, removal of wallpaper or paper cleaning."

9

employer] has been established." *See Trustees of the Roofers Local 149 v. J.D. Candler Roofing Co.*, No. 12-CV-10048, 2013 WL 154216, at *5 (E.D. Mich. Jan. 15, 2013). If G&T is ultimately found liable for unpaid contributions, the Court will address Mr. Liangis' potential liability at that time.

Second, Defendants have filed a motion asking the Court to strike a chart attached to the Trustees' summary judgment materials, along with any references to the chart in the Trustees' brief. The chart shows that Defendants have made three payments (totaling $10,625.24) towards the delinquency claimed by the Trustees in this case. Defendants argue that the Trustees are attempting to use these payments as evidence that Defendants are liable for the unpaid contributions sought by the Trustees, in violation of Federal Rule of Evidence 408. Because the Court has not relied on the chart in question for any purpose other than to discern the total amount presently in dispute in this case, Defendants' motion to strike is denied as moot.

**SO ORDERED.**


Dated: June 17, 2014                    s/PATRICK J. DUGGAN
                                        UNITED STATES DISTRICT JUDGE